IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | 2:17cv1676 |
| v. | ) | 2:16cr4-11 |
| | ) | **Electronic Filing** |
| **GREGORY GRAY, SR.** | ) | |

## OPINION

Movant Gregory Gray, Sr. ("Gray" or "petitioner"), commenced this action by filing a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. The government opposes the motion and has filed a brief in opposition thereto. For the reasons set forth below, the motion will be denied.

Gray received by any accurate assessment what can only be perceived as a very favorable plea agreement and reasonable sentence. Notwithstanding such a sentence, he now seeks relief pursuant to § 2255, advancing the following purported grounds for relief: 1) counsel's ineffectiveness for not advising petitioner that he could "unmask" his "uncollaborated confidential informant [which would have] allowed petitioner the right to question him through discovery and cross examination", 2) the post-conviction discovery petitioner received from his counsel revealed that there was no evidence against him other than the statements of a confidential informant, contrary to counsel's pre-plea advise that the "discovery" against petition was "strong," and 3) counsel did not investigate the case and assess the chances of conviction; instead, he based his advice to petitioner on the prosecutor's oral statements instead of the available discovery, and a proper investigation would have revealed that only the word of a confidential informant provided a basis for establishing petitioner's culpable conduct.

The government opposes the motion. It notes that petitioner essentially has argued in his supporting brief that counsel was ineffective for three reasons. First, counsel did not file a motion for disclosures under the Jenks Act. Second, counsel deprived petitioner of a full and complete review of the discovery, which he needed to make a knowing and voluntary decision to plead guilty. Third, counsel failed to investigate the case and made misrepresentations about the evidence against petitioner. Government Response (Doc. No. 810) at 7. The government further highlights the substantial benefit petitioner obtained from the plea agreement negotiated by counsel, which reduced petitioner's exposure from at least 60 months to an ultimate sentence of 20 months after application of the Safety Valve and a variance, as well as the formidable impact of defendant's acknowledgements made under oath during petitioner's change of plea hearing on the current claims being advanced.

Pursuant to the plea agreement petitioner negotiated with the government, petitioner waived any right to pursue a collateral attack of his conviction, save a claim that petitioner was deprived of the assistance of counsel as secured by the Sixth Amendment. But as highlighted throughout the government's responsive brief, the record clearly demonstrates that petitioner's claims of ineffective assistance of counsel amount to nothing more than vague assertions and conclusory statements. The record likewise overwhelmingly supports an assessment that counsel was quite effective in any event. It follows that petitioner's claims to the contrary must be denied as meritless.

A § 2255 motion may be disposed of summarily where the motion fails to set forth a basis upon which relief can be granted or where the factual allegations advanced in support of the motion are vague, conclusory or patently frivolous. See Rule No. 4 of the Rules Governing § 2255 Proceedings; Blackledge v. Allison, 431 U.S. 63 (1977); Page v. United States, 462 F.2d

932, 933 (3d Cir. 1972) (where the record affirmatively indicates that a claim for relief is without merit, it may be decided summarily without a hearing). In Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), the United States Court of Appeals for the Third Circuit stated:

> A Section 2255 motion is addressed to the discretion of the trial judge in the first instance and where the record affirmatively indicates the claim for relief is without merit, the refusal to hold a hearing will not be deemed an abuse of discretion.

Id. Other courts have reached the same conclusion. See Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (proper for district court to dismiss portion of § 2255 petition without evidentiary hearing where allegations conclusively failed to state a claim for relief); United States v. Oliver, 865 F.2d 600, 604 (4th Cir.), cert. denied, 493 U.S. 830 (1989) (district court may dismiss § 2255 petition pursuant to Rule 4(b) where record conclusively demonstrates that movant is not entitled to relief as a matter of law); Mathews v. United States, 11 F.3d 583, 584-86 (6th Cir. 1993) (where § 2255 petition raises no factual disputes and bases for relief are without merit, district court need not hold an evidentiary hearing and may dismiss the motion summarily).

A two-part test is utilized to assess an ineffective counsel claim. See Strickland v. Washington, 466 U.S. 668 (1984). The first prong requires the petitioner to demonstrate that counsel's performance was deficient. This requirement is met where "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Flamer v. State of Delaware, 68 F.3d 710, 728 (3d Cir. 1995) (quoting Strickland, 466 U.S. at 687)). This prong requires proof that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, which existed at the time. Id. The assessment begins with a "strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. Id. (citing Strickland, 466 U.S. at 689); see also Government of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996). The assessment of counsel's performance must be made in light of all the circumstances and the ultimate objective of assuring vigorous advocacy of the petitioner's defense. Id. It also must be made without the "distorting effects of hindsight" and the petitioner has the burden of overcoming the strong presumption that counsel was effective. United States v. Kissick, 69 F.3d 1048, 1054 (10th Cir. 1995).

The second prong of the Strickland analysis requires a showing that counsel's ineffectiveness was prejudicial. Flamer, 68 F.3d at 728. This prong requires a petitioner to demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the prosecution would have been different. In this context "[a] reasonable probability is one which is 'sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694). The assessment cannot be based upon generalities, but instead must be based upon a demonstration of how the "specific errors of counsel undermined the reliability of the [outcome]." Flamer, 68 F. 3d at 729 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)). Where the alleged error is based upon a failure to make a reasonable investigation or the election to pursue one defense over another, a heavy measure of deference must be accorded to counsel's judgment. As long as there was a reasonable basis for counsel's strategic decision, counsel may not be found to be ineffective. See Weatherwax, 77 F.3d at 1432.

Petitioner misapprehends both the scope of "the discovery" he was entitled to pursue and obtain prior to trial and his ability to further explore and challenge such information through the adjudicatory process. Petitioner asserts that captured communications only revealed his assent to

a transaction involving the purchase of an automobile with the kingpin of the conspiracy alleged in the indictment, and, had matters been further pursued, the investigation would have revealed that the government's case turned on the word of a confidential informant. But this assertion is undermined sufficiently by petitioner's own revelations about his discussions with counsel. Petitioner admits that counsel examined and considered petitioner's explanation that the text message of "how much" was really about the acquisition of a Cadillac DTS and the Pennsylvania State Police had misrepresented that the text was without any other content, when in fact there had been pictures of a Cadillac DTS sent with it. See Petitioner's Brief in Support (Doc. 768) at 5. And petitioner admits that after evaluating petitioner's version, counsel advised him that the text message was insignificant "because there was other evidence, including eyewitness statements, and text messages against him, and advised him to plead guilty with a safety valve." Id. Petitioner assumes that the only means by which to corroborate or disprove the validity of counsel's statements is through a review of the "discovery" produced by the government. Id. at 5-6 ("At no time prior to the plea or sentencing did Petitioner ever review any other evidence, because despite counsel's fraudulent assertions, no other potentially incriminating evidence existed." ). And he assumes that he could have obtained disclosure of all such eyewitness statements and other text messages prior to his decision to plead guilty through the filing of a motion pursuant to the Jencks Act. Id. at 6. ("If counsel would have informed Petitioner of his right to file a Jencks Motion, Petitioner would have demanded it to confront these individuals before pleading."). Of course, such speculative and wildly inaccurate assumptions and understandings cannot supply a competent foundation for making even a prima facie case of ineffective assistance of counsel. And petitioner acknowledges that counsel's advice was based in part on petitioner's potential exposure to substantially more time if he opted to pursue such a

course.  Id.  (In forwarding the "discovery" post-conviction, counsel reiterated that he had reviewed the evidence with petitioner and they had "agreed it was in [petitioner's] best interest to plead guilty because according to conversations with [the Assistant United States Attorney] they had eyewitnesses against him and he could not file a Jencks Motion under 18 U.S.C. § 3500 because he might not get the safety valve.").

Of course, where counsel's advice is based upon assessments of the risks created by the strength of the known evidence as it relates to 1) the chances of conviction and 2) the potential for alternative outcomes available to the defense, counsel's decision to recommend one strategic approach over another is the epitome of the advice of counsel guaranteed by the Sixth Amendment.  See Weatherwax, 77 F.3d at 1432; accord Flamer, 68 F.3d at 728 (Where counsel's performance involves the election of seeking one defense strategy over another the court must assume "counsel's conduct falls within the wide range of reasonable professional assistance" until petitioner advances concrete evidence to the contrary).  In other words, counsel's advice to forgo motions practice and trial and its accompanying risk of losing the safety valve in the face of disclosed witness testimony against petitioner from confidential informants and/or cooperating coconspirators and the other corroborating evidence referenced by the prosecutor and instead accept the plea with the benefit of the safety valve is exactly what the Sixth Amendment demands.  And a constitutional violation cannot be predicated on an ill-founded and factually unsupported post-sentencing understanding of the results the alternative course would have produced.  Cf. Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Moreover, the sources and force of the government's evidence against petitioner is borne out by a review of the factual basis proffered at petitioner's change of plea hearing. At that hearing the following was placed on the record:

> THE COURT: But at this time, Mr. Lamb, could I have a summary of the government's evidence?
>
> MR. LAMB: Your Honor, in 2014 and 2015, Gregory Gray, Senior, received cocaine from Rodney Harris in various quantities that amounted to more than five hundred grams, which Gray then distributed to others. Gray often obtained the cocaine from Harris by calling to tell him that he was leaving now and then driving to meet Harris at 51 Rear Murray Avenue in Uniontown, where Harris would give him the cocaine. On at least one occasion during the conspiracy, Harris supplied Gray with an entire kilogram of cocaine.
>
> THE COURT: Sir, as it pertains to you, was that statement concerning the government's evidence accurate?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Any additions or corrections?
>
> MR. PAULICK: No, Your Honor.
>
> THE COURT: The Court finds the factual basis for the change of plea to be adequate.

Transcript of Hearing on Change of Plea, August 25, 2016 (Doc. No. 810-1) at 15-16. This proffer and petitioner's acknowledgement of its accuracy under oath meaningfully undermines his contention that he was never informed of the evidence against him.

Similarly, the court reviewed with petitioner his constitutional right to confront witnesses prior to accepting his change of plea. He acknowledged that he understood the right and the consequences of forgoing his ability to pursue it at trial. And of course, petitioner cannot identify a pretrial right to identify and examine witnesses prior to the entry of a guilty plea. This is because no such right exist. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (there is no general constitutional right to discovery in a criminal case); United States v. DePasquale, 740 F.2d 1282, 1294 (3d Cir. 1984), cert. denied, 469 U.S. 1228

7

(1985) (A defendant is not entitled to obtain a list of the government's witnesses through discovery); United States v. Fioravanti, 412 F.2d 407, 410 (3d Cir.), cert. denied, 396 U.S. 837 (1969) (a defendant has no right to discover the minutia of the government's evidence or the manner in which it will be used).  It follows that his post-incarceration construction of what he would have gained from the pursuit of discovery and his resulting ability to discredit the government's case against him fails to supply a sound basis for subjecting counsel's advice to further judicial scrutiny.

Petitioner's contention that the record supports an inference that had he not entered a change of plea, there is a reasonable probability that he would have been acquitted of the offense of conviction equally is misplaced.  See Brief in Support (Doc. No. 768) at 8.  To the contrary, a thorough and competent review of the record supports the opposite inference.  Petitioner had numerous dealings with the kingpin of the conspiracy as well as his righthand man.  Petitioner was captured in numerous pieces of surveillance and recorded communications.  There were many sources for direct evidence of petitioner's participation and the incentive for a number of these sources to proffer assistance to the government.  Petitioner admits that counsel investigated petitioner's explanation of certain of the captured communications as well as the other evidence the government indicated was within its war-chest.  The inference of obtaining a more-favorable outcome by filing a motion pursuant to the Jencks Act and proceeding to trial is not even remotely suggested by this backdrop.  It follows that petitioner's first motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 fails to raise any basis warranting further proceedings in support of the relief he seeks and must be denied as a matter of law.

Finally, petitioner's concomitant request for a certificate of appealability must be denied. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where the district court has rejected a constitutional claim on its merits, to obtain a certificate "[t]he [movant ] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Applying those standards here, it is clear that jurists of reason would not find it debatable as to whether each of movant's claims supply a sufficient basis for further record development. As noted above, the applicable law and information of record demonstrate that they are without merit and reasonable jurists would not find this assessment to be debatable or wrong. Accordingly, movant's concomitant request for a certificate of appealability must be denied.

For the reasons set forth above, petitioner's motion pursuant to § 2255 will be denied as meritless and his concomitant request for a certificate of appealability likewise will be denied. Appropriate orders follow.

Date: March 18, 2021

                                               s/ David Stewart Cercone
                                               David Stewart Cercone
                                               Senior United States District Judge

cc:       Gregory Gray, Sr.
           1310 Lower Sandy Hollow Rd.
           Vanderbilt, PA  15486

           (*Via First Class Mail*)

           Heidi Grogan, AUSA

           (*Via CM/ECF Electronic Mail*)